Filed 8/5/26  Choi v. Song CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SOON BOK CHOI,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HAE SOOK SONG,<br><br>    Defendant and Appellant. | B349485<br><br>(Los Angeles County<br>Super. Ct. No. 25STCV09343) |

APPEAL from an order of the Superior Court of Los Angeles County, Maurice A Leiter, Judge. Affirmed.

Henry M. Lee for Defendant and Appellant.

Moon & Dorsett and Dana Moon for Plaintiff and Respondent.

* * * * * *

Defendant and appellant Hae Sook Song (appellant)[1] appeals from an order denying her special motion to strike pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP motion) against plaintiff and respondent Soon Bok Choi, also known as Soon Bok Yoon (respondent).[2] Appellant contends respondent failed to show a probability of prevailing on her defamation claim. We disagree and affirm.

## BACKGROUND

### I. The alleged defamatory statements

In December 2023, respondent was unanimously elected by over 100 members as the 48th president of the Sudo Girls' High School Southern California Alumni Association (association). Under chapter 4, article 9, sections 1 and 2 of the association's bylaws, respondent's two-year term ran from January 1, 2024, to December 31, 2025.

The association has a large alumni group chat with over 250 members on the KakaoTalk platform. In July 2024, appellant and Jungsoon Park also known as Loren Park, an unsuccessful presidential candidate, posted a message in the group chat titled "President Yoon Evaluation Report." In the post, appellant alleged respondent embezzled $10,000 in membership dues, $1,500 for commemorative blankets, and $540 for a plaque. When someone raised the $540 plaque in the group chat, appellant

---

[1]     The record also refers to appellant as Hae Sook Kim. There is conflicting information in the record as to whether this is a proper alias. We refer to appellant as Hae Sook Song here because this was the name provided to us by appellant.

[2]     All undesignated statutory references are to the Code of Civil Procedure.

2

responded, "Since Ms. Myung Hee Koh says she doesn't know, I guess Ms. Soon Bok Yoon did it alone." After participating in an unlawful organized members' meeting that falsely announced respondent was dismissed from office, appellant began calling respondent a "thief" and a "removed president" in the group chat. Appellant ignored the association's formal warning to stop posting in the alumni group chat. Appellant also urged others to avoid communicating with respondent.

The accusations of embezzlement spread to the Korean national headquarters and United States alumni chapters. Moon Namsook, the Korean headquarters chapter president, personally contacted respondent to question her about the accusations. On December 24, 2024, an article appeared in The Korea Times reporting respondent had been impeached and appellant would be the association's new president. Many alumni learned of the report and contacted respondent in shock. Respondent's children and grandchildren were ashamed and questioned respondent about the accusations. Respondent claims the accusations that she was a "thief" and a "removed president" harmed her 50-year career in the Korean American medical field.

## II.    The complaint

Respondent filed a complaint for defamation against appellant on April 1, 2025. Respondent alleged appellant actively participated in defaming respondent by posting accusations of embezzlement in the association's KakaoTalk group chat. Respondent averred the allegations regarding the $540 plaque were proven false, but appellant continued to accuse respondent of embezzlement. Appellant's accusations allegedly spread widely in the Korean American community. Respondent alleges these acts have caused irreparable harm to respondent's longstanding

reputation. Respondent sought general and special damages, as well as punitive damages.

## III.   The anti-SLAPP motion

In May 2025, appellant filed an anti-SLAPP motion. Appellant contends her statements are protected activity under the anti-SLAPP statute because they are communications among members of a nonprofit organization concerning internal governance matters. Appellant argued respondent cannot show a probability of prevailing because the statements regarding the president's misconduct are inherently subjective and not provably false. Further, appellant asserted the common interest privilege protects her statements because they are good faith communications made among people who share a common interest.

In opposition, respondent posited appellant's statements are not protected because they were coordinated efforts to defame and disrupt an organization and to unlawfully remove respondent from office. Respondent maintains she has shown a probability of prevailing on her claim because she provided evidence—including chat logs, bank documents, witness statements, and medical records—demonstrating repeated defamation, interference, and emotional distress.

On July 16, 2025, the trial court heard argument concerning the anti-SLAPP motion and took it under submission. Eight days later the court issued an order denying the motion. The court found the alleged defamatory statements are protected under section 425.16, subdivision (e)(3), because they involve matters of public interest as they concern an elected official's fitness to serve. The court found the KakaoTalk platform where the alleged statements were posted to be a public forum.

4

Further, the trial court found respondent established a probability of prevailing on her claim because the comments regarding embezzlement are statements of fact that, if false, are defamatory. The court also found the evidence showed malice, indicating respondent had demonstrated appellant "made false statements accusing [respondent] of illegal acts, called her a 'thief,' urged others to avoid communicating with her and ultimately installed [appellant] as President after falsely 'removing' [respondent] as president."

Appellant timely appealed.

## CONTENTIONS ON APPEAL

Appellant asserts three main arguments. First, appellant contends respondent cannot show a probability of prevailing on her cause of action for defamation because the alleged defamatory comments were not statements of fact that can be proven false. Second, appellant argues the common interest privilege protects the statements at issue. Finally, appellant asserts respondent failed to present sufficient evidence of reputational or other cognizable harm.

## DISCUSSION

### I.     Standard of review and applicable law

""""We review de novo a ruling on a special motion to strike under section 425.16. [Citation.] Thus, we apply our independent judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim.""" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671 (*Balla*).) "An appellant still bears the ""burden of affirmatively demonstrating error.""" (*Ibid*.)

5

"In evaluating an anti-SLAPP motion, courts conduct a two-step analysis. First, the court decides whether a defendant has met its 'burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.'" (*Manlin v. Milner* (2022) 82 Cal.App.5th 1004, 1017–1018 (*Manlin*).) "For these purposes, protected activity 'includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e).)" (*Id.* at p. 1018.)

"Second, if a defendant meets its burden on the threshold showing, the court decides if the plaintiff 'has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).)" (*Manlin, supra*, 82 Cal.App.5th at p. 1018.) "To satisfy this burden, the plaintiff '"must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Ibid*.) "At the second step, the court's 'inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true,

6

and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citations.] "[C]laims with the requisite minimal merit may proceed."'" (*Balla, supra*, 59 Cal.App.5th at p. 671.)

"'Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion.'" (*Manlin, supra*, 82 Cal.App.5th at p. 1018.) "'[T]o the extent any acts are unprotected, the claims based on those acts will survive.'" (*Ibid.*)

## II. Respondent showed a probability of prevailing on her defamation claim

### A. *The alleged defamatory statements contain actual facts that are provably false*

Appellant contends respondent cannot show a probability of prevailing on her defamation claim because the alleged defamatory comments are not statements of fact that can be proven false. Appellant argues the statements are only opinions, interpretations, or suspicions expressed in an internal organizational dispute.[3] We disagree.

---

[3] Appellant also asserts the trial court concluded the alleged defamatory statements are not protected activity under the anti-SLAPP statute. However, the court did not make that ruling. The court expressly held appellant "met the burden to establish the complaint arises from protected activity." Thus, appellant's

"'Defamation requires the intentional publication of a false statement of fact that has a natural tendency to injure the plaintiff's reputation or that causes special damage.'" (*J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP* (2016) 247 Cal.App.4th 87, 97.) "The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." (*Ibid*.) "[T]o support a defamation claim, the alleged statement must be one that is reasonably interpreted as stating *actual facts* that are *provably false*. 'The dispositive question ... is whether a reasonable trier of fact could conclude that the published statements imply a provably false factual assertion.'" (*Yelp Inc. v. Superior Court* (2017) 17 Cal.App.5th 1, 16 (*Yelp*).) Further, "where an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation." (*GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 156.)

"To make this determination [of whether an alleged defamatory statement is actionable fact or nonactionable opinion], we apply a totality of the circumstances test. First, we examine the language of the statement itself, to determine whether the words are understood in a defamatory sense. Second, we examine the context in which the statement was made." (*Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 686 (*Dickinson*).)

We conclude respondent presented evidence showing the alleged defamatory statements contain actual facts that are provably false. Respondent attested that appellant falsely

---

arguments as to the first prong of the anti-SLAPP statute are not applicable here.

claimed in a group chat that respondent embezzled $10,000 in membership dues, $1,000 for commemorative blankets, and $540 for a plaque. Respondent submitted nine KakaoTalk messages appellant posted between August 15 to September 27, 2024, two of which refer to the embezzlement accusations. For example, when the alleged embezzlement of the $540 plaque was raised in the group chat, appellant responded, "Since Ms. Myung Hee Koh says she doesn't know, I guess Ms. Soon Bok Yoon did it alone." A California certified Korean court interpreter translated these messages and submitted a certification of translation.

The statements at issue identify specific dollar amounts and items involved in the alleged embezzlement. Such statements are not mere subjective opinions or broad impressions—they may be definitively shown to be false through objective evidence, verifiable facts, or logical deduction. Misappropriation of the specifically identified funds belonging to the association is a provably false fact that can be established through objective financial or accounting documents. Indeed, respondent submitted invoices and a copy of the association's own financial records to prove the expenditures on the items were proper. While respondent presents other statements involving more subjective attacks on her character, the comments regarding misappropriation of specific funds involve provably false statements concerning a fact.

Further, the statements can reasonably be understood to be factual assertions when considering the context thereof. "In considering the *context* of the statement, we look at facts including the audience to whom the statement was directed [citation], the forum in which the statement was made [citation], and the author of the statement [citation]." (*Dickinson*,

9

*supra*, 17 Cal.App.5th at p. 686.) Appellant was an active member in the association, heavily involving herself in the organization's politics and frequently posting in the alumni group chat on KakaoTalk. Appellant directed statements to over 250 members by posting them in the association's KakaoTalk group chat. Given appellant's experience in the organization and the audience to whom the statements were directed, a reasonable trier of fact could find the published messages involve a provably false factual assertion. (See *Yelp, supra*, 17 Cal.App.5th at p. 16.) Indeed, respondent provided evidence that Namsook, the Korean headquarters chapter president, personally contacted respondent to ask if the embezzlement charges were true. While appellant characterizes the statements as merely expressions of concern, the evidence presented is sufficient for a prima facie showing of facts. (See *Balla, supra*, 59 Cal.App.5th at p. 671.)

**B.** ***Respondent presented sufficient evidence showing malice to overcome the common interest privilege***

Appellant also argues respondent cannot show a probability of prevailing because the common interest privilege protects the alleged defamatory statements. Appellant contends this privilege applies here because the statements were made to fellow association members regarding the association's funds. Appellant maintains respondent failed to present evidence of malice sufficient to overcome this privilege.

Under Civil Code section 47, subdivision (c), "[a] privileged publication or broadcast is one made" "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested …." "Civil Code section 47, subdivision (c) codifies the common law privilege of common interest, 'which protected

10

communications made in good faith on a subject in which the speaker and hearer shared an interest or duty. This privilege applied to a narrow range of private interests. The interest protected was private or pecuniary; the relationship between the parties was close, e.g., a family, business, or organizational interest; and the request for information must have been in the course of the relationship.'" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 914 (*Kashian*).)

"The common interest privilege is usually described as a qualified or conditional one, meaning it can be overcome by a showing of malice." (*Kashian*, *supra*, 98 Cal.App.4th at p. 914.) "The party asserting this privilege bears the burden to show that the statement was made on an occasion that falls within the statute. At that point, the opposing party has the burden to prove that the statement was made with malice." (*Dignity Health v. Mounts* (2024) 105 Cal.App.5th 113, 121.) "'"The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights [citations].'"'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 721.) "'[M]alice is not inferred from the communication.'" (*Kashian, supra*, at p. 915.)

"[A]ctual malice can be proved by circumstantial evidence." (*Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 257.) "Considerations such as 'anger and hostility toward the plaintiff,' 'reliance upon sources known to be unreliable [citations] or known to be biased against the plaintiff,' and 'failure to investigate' may, 'in an appropriate case, indicate that

11

the publisher himself had serious doubts regarding the truth of his publication.'" (*Balla, supra*, 59 Cal.App.5th at p. 683.)

Here, appellant shows the alleged defamatory statements were made on a privileged occasion. The statements were made to fellow members who share a common organizational interest in the association. Respondent does not dispute the statements were made on a privileged occasion. Instead, respondent contends she presented sufficient evidence of malice to overcome the privilege.

We conclude respondent made a prima facie showing of malice sufficient to overcome the common interest privilege. The evidence shows the association's treasurer posted a receipt for the $540 plaque on September 20, 2024, to challenge appellant's accusations of embezzlement. Rather than address this evidence, appellant escalated her accusations by subsequently posting two other messages on October 7, 2024, and November 14, 2024, asserting respondent misappropriated $10,000 in alumni funds. Appellant also filed a statement of information with the California Secretary of State on October 15, 2024, naming herself president of the association. About two weeks later, appellant falsely represented herself to be the president to try to withdraw funds from the association's account at PCB Bank.

These facts demonstrate appellant's anger and hostility towards respondent and a reckless disregard of the truth. Appellant not only ignored objective records challenging her statements, but she also thereafter made even stronger accusations of embezzlement against respondent. Appellant never responded to or acted with restraint in the face of the opposing evidence. Further, appellant tried to undermine respondent's presidency by filing official documents that falsely represented appellant as the association's president to third

parties. Appellant also ignored the association's formal warning to stop posting on KakaoTalk and urged others to avoid communicating with respondent. These facts are not merely "generalized claims of hostility" as appellant argues. The evidence clearly is sufficient to show appellant was personally motivated to harm respondent and recklessly disregarded whether her statements were false.

### C. *Respondent sufficiently showed reputational harm*

Finally, appellant maintains respondent failed to provide evidence establishing reputational or other cognizable harm. Appellant posits respondent's position relies largely on conclusory assertions of emotional distress and reputational harm, which do not satisfy respondent's burden of proof.

"Defamation requires both falsity and injury to reputation; the defamation per se analysis focuses on the latter, and even if context is necessary to show falsity it might not be needed for reputational harm." (*Balla, supra*, 59 Cal.App.5th at p. 690.) "[D]efamation per se does not require a finding of actual damages." (*Tilkey v. Allstate Ins. Co.* (2020) 56 Cal.App.5th 521, 542, fn. 5.) "[I]n an action for damages based on language defamatory per se, damage to plaintiff's reputation is conclusively presumed and he need not introduce any evidence of actual damages in order to obtain or sustain an award of damages." (*Contento v. Mitchell* (1972) 28 Cal.App.3d 356, 358.)

Since damage to reputation is conclusively presumed in a defamation per se analysis, respondent need not show actual

damages.[4] Nevertheless, respondent provided sufficient evidence demonstrating reputational harm. An article appeared in The Korea Times on December 24, 2024, reporting respondent had been impeached and appellant would assume the office. Many alumni saw the news and contacted respondent in shock. As mentioned earlier, Namsook contacted respondent to verify the embezzlement charges. Respondent attested that the accusations she was a "thief" and a "removed president" harmed her 50-year career in the Korean American medical field. Respondent even faced questions from her own family regarding the accusations. Respondent attested her children and grandchildren were shamed. These are not conclusory assertions as appellant argues, as the evidence is sufficient for a prima facie showing of reputational harm.

## DISPOSITION

The July 24, 2025 order denying the special motion to strike pursuant to section 425.16 is affirmed. Respondent is awarded her costs on appeal.


CHAVEZ, Acting P. J.

We concur:


RICHARDSON, J.          GOORVITCH, J.

---

[4] Respondent asserts, and appellant does not dispute, the evidence sufficiently shows the alleged defamatory statements constitute defamation per se.

14